# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

LLOYD VALERE                              CIVIL ACTION NO. 13-CV-2584

VERSUS                                    JUDGE DOHERTY

COMMISSIONER OF SOCIAL SECURITY     MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of March 22, 2013. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the determination be affirmed.

### Background and Commissioner's Findings

Lloyd Valere filed applications for a period of disability, disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on November 28, 2007, alleging disability beginning November 1, 2007. The claim was initially denied, and Valere filed a timely written request for hearing, which was granted. The hearing was held on June 15, 2009, and a decision was issued by Administrative Law Judge Emery D. Curlee, denying the claim on September 17, 2009. [Tr. 18]. Valere sought review by the Appeals Council which, by Order on January 13, 2011, vacated the ALJ decision and remanded the case for further action, including a supplemental hearing.

Another hearing was held in August, 2011, before ALJ Robert Grant. On October 24, 2011, the ALJ again denied the claim. Valere again sought review in the Appeals

Council which again vacated the ALJ decision and remanded the case for further action, including another hearing.  A third hearing was held on March 1, 2013, again before ALJ Grant. After consideration of all the evidence and testimony, in a decision issued March 22, 2013, the ALJ issued a partially favorable decision, concluding that Valere was disabled through December 13, 2011, but that a substance abuse disorder was a contributing factor material to that disability. [Tr. 19].  With assistance from a medical expert, the ALJ further found that as of December 14, 2011, Valere's residual impairments medically equaled a listed impairment under the Regulations.  At that time, substance abuse was no longer material to his disability. [Tr. 19].  Valere again sought review, but the Appeals Council denied his request on June 26, 2013, making the ALJ decision the Commissioner's final administrative decision.   On August 30, 2013, Valere filed the instant Complaint in this Court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1]

### ASSIGNMENT OF ERRORS

Valere asserts that (1) the ALJ erred in finding that prior to December 14, 2011, the claimant's sole  severe impairment was a substance abuse disorder, as he failed to properly identify all of his severe impairments prior to that date; (2)the ALJ failed to properly consider the combined effects and limitations of all of the claimant's severe impairments throughout the sequential evaluation process; and (3) the ALJ failed to evaluate whether Valere's

cervical disc disease and spinal stenosis were disabling regardless of his substance abuse disorder, per Social Security Ruling 12-3p. [Rec. Doc. 16, p. 6].

### APPLICABLE LEGAL STANDARDS AND SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. §405(g). The court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision. *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). In making that determination, the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C.A. §405(g).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th

Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo,*  or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).  To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working);

-4-

(2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5ᵗʰ Cir. 2002); *Newton v. Apfel*, 209 F.3d at 453.  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his

impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.* Ultimately, the question of equivalence is an issue  reserved for the Commissioner. *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. §404.1520(a)(4). The claimant's residual functional capacity assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 C.F.R. §404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d at 705; 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the

attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner  makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

When a mental disability claim is made, such as bipolar disorder or major depressive disorder, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim.  Essentially, this procedure  substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings.  The regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, §404.1520(a)(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments. *Satterwhite v. Barnhart*, 44 Fed. Appx. 652 (5th Cir. 2002)(unpublished).

*The Effect of Drug/Alcohol Abuse on the Analysis:*

In 1996, Congress enacted a statute which eliminates drug and alcohol dependency as criteria for awarding disability benefits.  Drug abuse and alcoholism are no longer

-7-

considered disabling, regardless of how much those impairments interfere with an individual's ability to function.  Specifically, the regulation provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. §423(d)(2)(C).

On considering the disability claim of an individual who abuses drugs or alcohol, the agency or the reviewing court must determine whether the claimant is disabled, using all the rules of determining disability that apply to all claimants. 20 C.F.R. §§404.1535(a), 416.935(a).  Next, the agency (and court) must determine whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. §§404.1535(b)(1), 416.935(b)(1).  If the claimant would remain disabled if he stopped using alcohol or drugs, he would be found eligible for benefits. 20 C.F.R. §§404.1535(b)(2)(ii), 416.935(b)(2)(ii).  However, if the claimant would not remain disabled if he stopped using drugs or alcohol, he will be found ineligible for benefits. 20 C.F.R. §§404.1535(b)(2)(I), 416.935(b)(2)(i).

Courts have held that the burden is upon the claimant to show that he would be disabled even if he stopped abusing drugs or alcohol, and the Fifth Circuit holds that  a claimant who uses drugs or alcohol has the burden of proving that his drug or alcohol problem is not "material" to his disability, i.e., that he would still be disabled even if he stopped  using drugs or alcohol. *Brown v. Apfel*, 192 F. 3d 492, 499 (5th Cir. 1999).

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Lloyd Anthony Valere, Jr. is 56 years of age, with a birth date of December 8, 1956.  He served in the Army where he obtained a GED diploma.  He has no problem reading or writing.  He has done past work as a general laborer, concrete worker, cook's helper, fence builder helper, offshore utility hand, and forklift operator. [Tr. 45, 57] He has not worked since September, 2007 for reasons he has described to be problems with his hands, legs and groin area. [Tr. 39] He has not had a driver's license since about 2008. [Tr. 47] He admits to a long history of drug and alcohol use, without participation in AA or other self-help services. [Tr. 48] He has alleged disability as of November 1, 2007, later amended to January 1, 2009. [Tr. 37-38]

Medical records submitted during the extended course of consideration of the claimant's application for disability span the time period from 1989 to early 2013.  In July, 1996, Valere was a voluntary admit for a physical examination and psychological assessment at Abbeville General Hospital. He complained of mood instability, increased dysphoria, ideations of self-harm and homicidal ideations toward others. [Tr. 467].  His physical exam was essentially normal, but his psychological assessment resulted in a dual diagnosis consistent with major mood instability in conjunction with alcohol dependency. "Quite clearly alcohol dependency was identified as being a significant stressor in his overall life, ...." [Tr. 467] After five days, he was discharged, showing marked

improvement, with a fair prognosis for rehabilitation. He was instructed not to drink or use psychoactive chemicals. [Tr. 468]. In 2002, Valere was treated in the Abbeville General Hospital emergency room with complaints of low back pain after an incident at the jail during an incarceration. X-rays showed mild osteoarthritis of the lumbar spine. [Tr. 461-66].

Years later, in March, 2007, Valere was transferred to the VA Hospital from University Medical Center, and he was hospitalized for nine days. A drug screen was positive for cocaine, and Valere reported a $200/week cocaine habit. He also reported drinking 3-4 10 oz. beers a day. [Tr. 487, 492, 498] He reported a years-long history of alcohol and cocaine use/abuse. [Tr. 505]. He was diagnosed with depressive disorder, not elsewhere classified; cocaine abuse, unspecified. [Tr. 486-87].

His insights and judgment were considered impaired, secondary to substance abuse. [Tr. 488]. On discharge at his request, he was stable and in no distress. Motivation was noted to be fair. [Tr. 502]. He was given medications for neck pain, but no physical restrictions or limitations were imposed. [Tr. 488-89]. On discharge, Valere was given a diagnosis of Axis I: Cocaine dependence, alcohol dependence, substance-induced mood disorder; Axis II: deferred; Axis III neck pain; Axis IV: separation from wife, needs to live with relatives, financial stress; Axis V: GAF 75(improved from 65 at admit)[1]. [Tr. 487, 501].

_____

[1]Global Assessment of Functioning [GAF] is a numeric scale (0-100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning

-10-

On January 29, 2008, Valere was evaluated by clinical psychologist Dr. Alfred

Buxton, on a referral by DDS. [Tr. 526-29].  He gave a detailed history of completing his

GED during his three years in the Army.  He had last worked in November, 2007, doing

oilfield labor.  He reported he had to quit because he could not physically do the work.

He described constant legal problems "behind alcohol and drugs," and he was on

probation for possession of crack cocaine.  He reported daily alcohol use; his last crack

cocaine use was about four months earlier, and his last illicit drug use was about one

month earlier.  He smoked one pack of cigarettes a day.  Doctors had told him to stop

drinking.

Valere complained of numbness in both hands and legs and pain in the groin area.

Low back pain and neck pain were reported as constant with variable intensity.  He

reported occasional headaches with brief dizziness.  He acknowledged he was able to

cook, clean, shop, manage money, travel, communicate, and manage his time

independently.  He had good verbal language skills; his dress/grooming were good; his

social skills were described as good, and his memories were intact.  Concentration was

good, and intellect appeared to be within normal limits. Judgment, reasoning and

---

of adults.  American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders
at 32 (4th ed. 1994) ("DSM–IV").  A GAF score of 75 indicates no more than slight impairment in
social, occupational, or school functioning.  A GAF score of 65 indicates mild psychological
symptoms, which may include depressed mood and mild insomnia or some difficulty in social,
occupational or school functioning.  A GAF score of 60 indicates moderate difficulty in social,
occupational, or school functioning, and a GAF score of 50 indicates serious psychological
symptoms, which may include "any serious impairment in social, occupational or school
functioning." DSM–IV at 34.

reflective cognition were good; insight, self-image, and goal orientation were fair. Dr.

Buxton diagnosed depressive disorder, not otherwise specified, with mild/moderate

impairment and fair prognosis; polysubstance dependence with mild impairment and

guarded prognosis; adult anti-social behavior, with complaints of chronic pain.  Dr.

Buxton reported that "it is just difficult to say to what degree his substance abuse

contributes to the mood disturbance."  GAF   was noted to be 60. [Tr. 528].  Dr. Buxton

opined that Valere is bright enough to understand simple and some complex instructions

and commands; he should be able to perform in a reliable and dependable fashion as an

employee and tolerate the frustration/stress in a job setting, as long as he doesn't

aggravate his pain complaints and he has adequate motivation.  With mental health

intervention and substance abuse intervention, his overall capabilities as an employee

would improve. [Tr. 528].

In February, 2008, a psychiatric review was conducted by Dr. Jeanne George.  She

noted Valere's last illicit drug use was one month before ("legal weed"); his last crack

cocaine use was four months before.  She opined that a medically determinable

impairment was present which does not precisely satisfy diagnostic criteria: depressive

disorder, not otherwise specified. [Tr. 539].  She added that:

> It is medically reasonable to expect that his depression symptoms are the
> result of his substance use.  DAA would be considered material to the
> severity of any mental impairment that would prevent him from working at
> this time.  If he abstained from the use of drugs and alcohol, he would be
> capable of performing work commensurate in complexity with his past
> work as a laborer. [Tr. 548].

-12-

As to a mental Residual Capacity Assessment, she found  no limitation in Valere's ability to remember locations and work-life procedures or remembering or understanding very short/simple instructions and his ability to carry out very short/simple instructions; he had no limitations in his ability to maintain attention and concentration for extended  periods, to perform activities within a schedule, to maintain regular attendance, be punctual within customary tolerances, sustain ordinary routine without special supervision,  to work in coordination with others, or to make simple work-related decisions.  He was moderately limited in his ability to understand/remember detailed instructions and to carry out detailed instructions.  She clarified that her assessment was "[b]ased on the capability projected if he achieved and maintained abstinence from use of alcohol and drugs." [Tr. 552].

Also in February, 2008, an internal medicine evaluation was conducted by Dr. Kenneth Ritter. [Tr. 531-53].  Valere was noted to be a poor historian and a chronic alcoholic.  He reported he was told he had possible cirrhosis of the liver, and he admitted drinking a six-pack of beer daily and a pint of whiskey every other day.  He complained of chest pains 3-4 times a day and nausea without vomiting.  On examination, Dr. Ritter noted that Valere was in no acute distress.  He had full range of motion in the neck and back and all extremities.  No tenderness or swelling was noted in any joint, and straight leg raises were negative bilaterally, with normal gait and station.  Valere was noted to have a fine tremor, and he became upset when the doctor told him that alcohol abuse had

-13-

something to do with his leg pain complaints.  Dr. Ritter recorded complaints of numbness in hands/legs for the past year; a history of chronic depression, helped with current medications; ongoing cigarette smoking, and significant alcohol abuse "which is probably responsible for his major complaints regarding the numbness and tingling" [Tr. 533].  Functionally, he found that Valere's ability to lift/carry and stand/walk/sit was not affected by impairment, and he can frequently climb, stoop, kneel, balance, crouch, crawl. [Tr. 534].  No other impairments or restrictions were noted. "His ongoing substance abuse is his problem."[Tr. 535].

On January 21, 2009, Valere was admitted to the VA hospital for psychiatric services based on his complaints of depression and that he had "nowhere to go." [Tr. 588]. He was wearing an ankle bracelet due to probation.  His drug screen was positive for cocaine.  Discharge records note no sensory impairment or mobility limitation and no pain. [Tr. 623-24]. Valere was discharged to his brother's home after reporting he was better and wanted to continue outpatient treatment. [Tr. 645]. X-rays from his admission showed multi-level degenerative changes, mostly at C4-5 and C5-6.  As to the lumbar spine, the studies showed mild multilevel degenerative changes, without evidence of displaced fracture or destructive lesion; vertebral bodies were overall normal, without significant spinal canal or neural foramen narrowing.  Clinical correlation was needed on both studies. [Tr. 578-79].  Thoracic Spine X-rays showed mild  multilevel degenerative changes, and minimal degenerative changes were seen at both hips. [Tr. 580-81].

-14-

A neurology exam was conducted on January 26, 2009, noting Valere's complaints of numbness and burning and shaking of his left hand. [Tr. 598-99]. He reported he had stopped drinking for one week.  Motor strength was 5/5 in both upper extremities, with mild weakness of hand grip; lower extremities strength was noted to be 5/5, with normal tone throughout. [Tr. 599]. Sensory exam was intact in both upper and lower extremities, with decreased vibration in feet.  Valere had normal gait in heel/toe walking, with some difficulty with tandem gait. [Tr.600]. The report includes the assessment of peripheral neuropathy, likely etiology-alcoholism. [Tr. 600]. It was recommended that entrapment neuropathy of the upper extremities be ruled out, along with alcoholic cerebellar degeneration. "Long term abstinence from alcohol and street drugs is very, very unlikely." [Tr. 665]. A brain MRI in January 29, 2009 showed "mild generalized atrophy." [Tr. 576].

As of February 24, 2009, Valere had an outpatient consult for cocaine and alcohol dependence.  He reported he drank 6-12 drinks a day and used cocaine 3-4 times a week. [Tr. 590]. He reported his depression level as 1/10 and his pain in his hands, neck and back was 4/10. [Tr. 595]. He also indicated he had not used cocaine since January 15, 2009, and he had not had a drink since January 19, 2009.  His last marijuana use was 8 months earlier. [Tr. 596]. The Diagnostic Impression recorded that day was: Axis I: alcohol dependence, cocaine abuse, cannabis abuse; Axis II deferred; Axis III-see chart; Axis IV none noted; GAF 60. Somatic focus was noted, as well as the patient's failure to

accept that alcohol use may have a negative impact on his physical health.  Valere failed

to keep appointments for chemical dependence clinic visits in March, 2009.  In May,

2009, VA records indicate that Valere had been in a fist fight after drinking. [Tr. 704].

A Psychological Report was prepared by psychologist Dr. Ted Friedberg in June,

2009.  The report documents Valere's long history of alcohol and substance abuse and 5-6

years of cocaine use.  He was noted to have borderline range of intelligence, with no

gross deficits in memory functioning and mild problems with concentration and attention.

According to Dr.  Friedberg, "the combination of organic factors and emotional overlay

will contra-indicate his ability to handle viable vocational endeavors." [Tr. 712]. By July

24, 2009, VA progress notes indicated that Valere's medications were working, and he

was living with his brother and helping to care for his brother's yard.  He had been in a

fight with another brother.  He continued to drink and use cocaine monthly and had used

marijuana a few times in the last month.  He had a positive drug screen in May, 2009. [Tr.

728-29]. Nevertheless, Valere was noted to have normal speech, average intellectual

functioning and goal-directed and focused thought processes.  He had slowed psycho-

motor status and limited insight regarding his problems and continued to deny that his

substance use is a problem. GAF score was noted to be 62.

In November, 2009, Valere was admitted to the VA hospital for ten days after

reporting depression and suicidal ideations. He tested positive for cocaine on admit. [Tr.

-16-

764].  He had stopped taking his psychotropic medications one month earlier.  He noted

his pain in his hands and legs was 3/10.  Diagnostic impression was noted to be

polysubstance dependence; GAF score was noted to be 70. [Tr. 757]. Valere was in good

spirits at discharge. [Tr. 774] He failed to keep clinic appointments through January 13,

2010.  On February 9, 2010, Valere visited the clinic and reported he continued to drink

3-4 days a week. [Tr. 946-47]. He was told that "it is not likely the meds will work and

symptoms will not improve if he continues to use alcohol." [Tr. 948]. GAF score was

noted to be 63.

On May 12, 2010, Valere had a stress test and walked on a treadmill for nearly

seven minutes, with results showing below average fitness. [Tr. 938]. On June 30, 2010,

he expressed frustration with waiting for SSDI and concern he may have to go to work.

[Tr. 934-35]. He was continuing to drink a six pack of beer every three days, but he

denied using drugs.  GAF score was noted to be 62.

By August, 2010, an MRI of the cervical spine showed diffuse narrowing of the

central canal at C5-7, secondary to encroachment by osteodiscogenic complex; increased

signal within the spinal cord at C5-6 was noted to be concerning for impingement and

spinal cord edema; multi-level disc disease with desiccation from C2-T-1, with no

evidence of neural foraminal stenosis throughout.  In the Primary Diagnostic Code section

was noted "Critical abnormality needs urgent action."[Tr. 872-73]. A neurosurgery

consult was recommended as an immediate need. [Tr. 927].  Valere failed to keep medical

appointments from August through October, 2010. [Tr. 897, 924]. By December 23,
2010, he reported moderate depressive symptoms with no recent psychotic features.  He
acknowledged alcohol use every other day. GAF was 55. [Tr. 922-23]. In January, he had
a positive drug screen for cocaine. [Tr. 880, 912]. On January 20, 2011, records indicate
that the "main problem at this time is his cervical radiculopathy," with peripheral
neuropathy, probably ethanol related. [Tr. 916].

A psychology note from February 24, 2011 indicated that Valere described life as
good; he was drinking every other day, and his last drug use was two weeks before.
Recent substance use was noted to be the likely contributor to his depression and other
psychiatric symptoms, but Valere had no interest in AA or other such services. GAF was
52. [Tr. 912-13]. On examination, a positive Phalens sign[2] was noted, with numbness and
tingling. [Tr. 915].

In March, 2011, Valere complained of trouble with his hands with numbness and
pain down both arms in no particular pattern. On examination, he had strength of 4/5 in
both hands intrinsics, and 5/5 otherwise throughout; sensation was grossly intact; reflexes
were 3+ throughout; no Hoffman was noted.  The recorded  assessment was cervical
stenosis, with likely benefit to be had from posterior decompression at C5-7.   Surgery
was scheduled for November 1, 2011. [Tr. 1007-08]. Valere cancelled and failed to
appear for mental health appointments in May and June, 2011, reporting that he was

---

[2]Phalen maneuver is done to check for carpal tunnel abnormality.

doing fine, with improved mood and manageable anxiety.  He denied recent cocaine or drug use, but continued to drink alcohol every other day. [Tr. 1001-02]. Records from July 13, 2011 include a negative drug screen and Valere's reference to cutting down on alcohol intake, trying 'legal weed,' but not cocaine. [Tr. 997, 999]. Valere was noted to have normal speech, logical thoughts, fair insight/judgment, and "significantly improved mood and anxiety."  GAF was 62. [Tr. 999-1000].

As of August 8, 2011, when Valere testified at the second hearing in the instant matter, he reported he went to the VA for medical treatment every six months and saw a psychiatrist every three months. [Tr. 71]. He confirmed he could pick up a  coffee cup, paper clip or coins.  He could dress himself and do light chores, including dishes and sweeping. [Tr. 74]. He declared he could not lift anything heavier than ten pounds. [Tr. 82]. He reported neck surgery was scheduled for November, 2011 at the VA hospital.  In a decision dated October 24, 2011, the ALJ noted that Valere's exertional capacity was reduced to sedentary work levels in view of the degenerative changes shown on MRI.  He noted also that absent substance abuse, Valere's only severe impairment would be his cervical spine problem.  Without DAA, he could do light work. [Tr. 144].

Valere failed to keep his medical appointment in September, 2011, and he continued to abuse alcohol every other day through mid-October, 2011. [Tr. 1155-56]. On October 25, 2011, he reported his leg was giving out, and he attended his medical appointment using a cane.  Cervical surgery was performed as scheduled on November 1,

-19-

2011.  On his return for staple removal, he was noted to have poor wound care, and he was sent back to the Houston VA. [Tr. 1024-25, 1141]. On December 14, 2011, VA Dr. Claudio Tatsui drafted a letter with his estimate of a 4-6 month period to full recovery, but noting permanent and irreversible neurological dysfunction preventing gainful employment. [Tr. 1026]. Following the surgery, Valere continued to complain of numbness and tingling in he left hand, pain in his neck with tightness and diminished range of motion in his cervical spine.  Physical therapy was recommended. [Tr. 1035].

Valere sought to schedule a VA appointment in February, 2012, and he failed to keep scheduled appointments through May, 2012. [Tr. 1123, 1128, 1133, 1138].  In a one year post-surgery visit at the VA hospital in September, 2012, Valere reported he had never gotten better after surgery. [Tr. 1034].  MRI of the cervical spine showed moderate C3-4 central disc protrusion, with severe spinal canal stenosis, moderate cord atrophy and myelomalacia from C3-4 to C6, and multilevel intervertebral foraminal stenosis and degenerative changes. [Tr. 1-54-55]. Valere received a favorable disability decision from the VA in November, 2012. [Tr. 1028-30]. By January, 2013, Valere was receiving treatment at the VA hospital for lumbar complaints, with reports of substantial improvement in neck pain and left upper extremity radiculopathy. [Tr. 1033].

*The Administrative Hearings:*

Valere has had three administrative hearings on his claim.  He testified at two of them.  He has admitted his long history of drug and alcohol abuse and his resistance to

participation in AA or other support activities.  He has conceded that as of August, 2011,

he could dress himself, do light chores and lift up to ten pounds.  On that date, Valere

testified that drugs and alcohol were "a thing of the past," but medical records indicated

otherwise.  As of October 24, 2011, the ALJ had considered severe impairments in

combination to include peripheral neuropathy, depression, degenerative disc disease of

the cervical spine and the scheduled cervical surgery.  He concluded that absent substance

abuse, Valere's only severe impairment would be his cervical spine problem. [Tr. 144].

Without DAA, Valere could do the full range of light work.  On remand, the ALJ

obtained a medical expert to clarify Valere's impairments, and he obtained further

evidence from a vocation expert.  He took testimony from the experts in a third hearing

on March 1, 2013.

Dr. George Smith testified as a medical expert.  He had not examined Valere, but

he had accessed and reviewed all of the medical evidence, which he opined was

sufficient to formulate an opinion regarding the claimant.  He noted Valere's extensive

history of depression and the strong history of drug and alcohol abuse, citing  the

evaluations by Drs. Buxton, Friedberg and Ritter.  He observed that in his review of the

records, all providers seemed to think a large part of Valere's problem had to do with

substance abuse. [Tr. 99]. He agreed, opining that Valere has the physical effects of his

ongoing alcohol abuse.  He noted the VA psychiatric and medical evaluations, and he

confirmed the existence of peripheral neuropathy for some time, but he also noted that

actual exam records showed good motor strength and normal finer reflexes.  As of

January, 2009, Dr. Smith would not have restricted Valere based on those findings, and

he would assume Valere was capable of occasional handling/fingering activity based on

medical records. [Tr. 101-103]. According to Dr. Smith, while Valere had neuropathy for

a long time, it did not reach a listing level until 2011. [Tr. 106]. The first indication of

spinal stenosis and a decision to address the problem by surgery was in August, 2010. [Tr.

107]. In responding to questions at the hearing, Dr. Smith opined that as of the hearing

date, Valere probably equaled Listing 11.14.  His substance abuse absolutely had

something to do with that, and had Valere quit drinking and using drugs years ago, he

may have avoided his presenting problems.  As of the hearing date, however, Dr. Smith

considered the problems to be irreversible. [Tr. 98]. He noted from the records that

December 14, 2011 was the first time someone came out and said  what Valere's

condition was in absolute terms. [Tr. 98].  On that testimony, the ALJ declared at the

hearing that he would find that Valere at least equaeds Listing 11.14, leaving the only

issue to be determination of the onset date. [Tr. 99].

　　　　Throughout the administrative record, there is movement in the identification of

the disability onset date alleged by the claimant.  At the outset, Valere alleged an onset

date of November 1, 2007, but that date was not supported in the medical records. [Tr.

37].  At the second administrative hearing, conceding that the original onset date could

not be supported, the claimant amended the onset date to January 1, 2009. [Tr. 70].  At

the end of the hearing, Valere's representative suggested that July 7, 2010 would be an acceptable onset date.   In his appeal of the most recent ALJ determination, Valere urged acceptance of an onset date of either January 22, 2009, or August 5, 2010, to avoid a fourth hearing and appeal. [Tr. 451].

*The Determination of the ALJ:*

The record  demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Mr. Valere.  He found, at step one, that the claimant has not engaged in substantial gainful activity at any time relevant to his decision. [Tr. 21]. This finding is supported by the record. At step two, the ALJ determined that before December 14, 2011, Valere had the severe impairment of substance abuse disorder.  As of that date, he had the severe combination of impairments of peripheral neuropathy, depression, degenerative disc disease of the cervical spine and cervical spine stenosis. [Tr. 21]. Valere challenges this finding.  At step three, the ALJ determined that since December 14, 2011, Valere has had a combination of impairments which meet or medically equal a listed impairment in 20 C.F.R.§ Part 404, Subpart P, Appendix 1, namely Listing 11.14. [Tr. 22-23]. Valere does not challenge this finding.

Despite the finding of disability as of December 14, 2011 at step three, the ALJ then considered the time period before December 14, 2011, to evaluate Valere's medical condition, his functional limitations and the materiality of his substance abuse disorder during that period.  After considering the entire record, he found that before December

-23-

14, 2011, based on the impairments including substance use disorder, the claimant had the residual functional capacity (RFC) to perform work at all exertional levels, except for the ability to perform no more than simple routine repetitive tasks and no more than simple 1-2 step tasks; the inability to perform work requiring production quotas, and the inability to sustain full-time work activity over a 40 hour workweek, due to the need for frequent unscheduled breaks stemming from interference in work performance from symptoms related to substance abuse. [Tr. 24].  The ALJ found that prior to December 14, 2011, the claimant was unable to perform past relevant work.  He considered the claimant's age, education, work experience and residual functional capacity, including the substance use disorder, and concluded there were no jobs that existed in significant numbers in the national economy that Valere could have performed prior to December 14, 2011. [Tr. 27]. Applying Public Law 104-121, the ALJ elaborated that even if Valere could have performed work in the full exertional range, his substance abuse issues made it impossible for him to sustain work on a continuous basis for five eight-hour days per week. Because Valere would not have been disabled prior to December, 2011 but for his substance abuse, he found the substance abuse disorder was a contributing factor material to the determination of disability before that date, and Valere was not entitled to benefits for that period under the Act. [Tr. 28]. The claimant has challenged this finding. There is no dispute that as of December 14, 2011, Valere's residual physical impairments were

irreversible and disabling, and DAA was not material as of that date, entitling Valere to benefits from that date forward.

### *Substantial evidence supports the ALJ's finding that substance abuse was material to Valere's disability prior to December 14, 2011, and Valere has failed to meet his burden to prove it was not material.*

Valere challenges the ALJ's finding that before December 14, 2011, the claimant had no severe impairment other than substance abuse disorder.  The finding is, however, supported in the record cited in the decision and set out in detail above.  As of February, 2008, Dr. Kenneth Ritter noted a fine tremor probably related to ongoing alcoholism.  His examination was otherwise normal and devoid of physical problems, noting full range of motion of the neck and back.  The doctor completed a functional capacities assessment and recorded no limitations from a physical standpoint.  He identified the claimant's problem to be substance abuse. By January, 2009, medical records documented Valere's complaints of hand numbness and weakness, but 5/5 strength was noted in both upper and lower extremities, with notations of a normal sensory examination.  Reference was made to peripheral neuropathy with a likely etiology of alcoholism.  In November, 2009, Valere was told that it was not likely his symptoms would improve if he continued to use alcohol.

Valere makes much of the results of an exercise treadmill stress test from May, 2010, which the ALJ found to be "of interest" and Valere suggests was determinative of the ALJ's decision. There are no indications in the decision that the ALJ used the stress

test to disregard other evidence, and the result was cited in the decision to suggest that Valere was physically capable of more than previous RFCs would allow.  As the ALJ explained, the medical evidence discussed in the decision simply failed to prove more than a minimal physical problem.  These recitations from the record support the ALJ's determination that before December 14, 2011, Valere's only severe impairment was substance abuse.  No physician pointed to any condition which would be expected to interfere with Valere's ability to work, other than substance abuse.

It was not until August, 2010 that MRI of the cervical spine showed diffuse narrowing of the central canal at C5-7, secondary to encroachment by osteodiscogenic complex; increased signal within the spinal cord at C5-6 was noted to be concerning for impingement and spinal cord edema; multi-level disc disease with desiccation from C2-T-1, with no evidence of neural foraminal stenosis throughout.  In the Primary Diagnostic Code section was noted "Critical abnormality needs urgent action."[Tr. 872-73].  Nevertheless, Valere failed to keep medical appointments from August through October, 2010.  Consistent through the medical records are repeated references and confirmations of  drug and alcohol abuse by Valere on a regular basis and cautions to him by his doctors of the dangers regarding same.

On January 20, 2011, records indicate that the "main problem at this time is his cervical radiculopathy," with peripheral neuropathy, probably ethanol related. [Tr. 916].  This was the first record of any physician pointing to a 'main problem' other than

substance abuse. Surgery was recommended and scheduled for November, 2011.   On

December 14, 2011, VA Dr. Claudio Tatsui drafted a letter with his estimate of a 4-6

month period to full recovery following the surgery, but noting permanent and

irreversible neurological dysfunction preventing gainful employment. [Tr. 1026].  This

was the first and only medical record as of that date indicating that Valere's spinal

condition was thought to be permanently disabling.  The record up to the December 14,

2011 date contains no physician-directed limitations or restrictions on Valere's physical

activity of whatsoever kind beyond cautions related to substance abuse.  On this record,

the ALJ's finding that substance abuse was material to Valere's disability prior to

December 14, 2011 is supported by substantial evidence.

Further, it is Valere's burden to prove those impairments which are "severe." *See*

*Cook v. Heckler*, 750 F.2d 39(5th Cir. 1985).     Except for conclusory assertions, he has

not done so.  It is also Valere's burden to prove that  drug or alcohol addiction is not a

contributing factor material to his disability. *See Brown v. Apfel*, 192 F.3d 492, 498(5th

Cir. 1999); SSR 13-2p. The record contains substantial evidence that before December

14, 2011, Valere's treatment providers repeatedly opined that alcohol and drug use caused

his neuropathy, and they repeatedly noted that his physical condition and his prospects for

employment would improve if he stopped abusing alcohol and drugs.  It was the opinion

of the medical expert, to which the ALJ gave "great evidentiary weight," that if Valere

had quit using drugs and alcohol when his doctors advised him to do so, he "might well

-27-

have avoided" a lot of the nerve damage found to be irreversible as of the December 14, 2011 date. On this evidence, the ALJ properly applied provisions of SSR13-2p to conclude that drug and alcohol abuse was a material factor to the disability determination up to the December 14, 2011 date.

As discussed above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).  It is well-settled that the Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818(5th Cir. 1986).  On the record before the court, the undersigned cannot conclude that the ALJ failed to base his determination on substantial evidence, that is evidence which is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel,* 239 F.3d  at 704.

## CONCLUSION AND RECOMMENDATION

After a careful review of the complete record, the ALJ and the designated expert witnesses had access to the complete treatment records of the claimant during the time of claimed disability and his admitted alcohol and substance use/abuse.  The claimant has not disputed the content of those records or the duration or extent of his substance use/abuse.  Medical opinions in the record support the conclusion that during the time of the claimant's substance abuse, and as a result of that abuse, he was unable to sustain

employment.  Based on this record, the undersigned finds that the ALJ conclusion that alcohol and drug abuse were  contributing factors material to the determination that Lloyd Anthony Valere, Jr. was disabled during the relevant time period up to December 14, 2011, and he was  therefore not entitled to benefits is supported by substantial, uncontroverted evidence.  As to the time period from December 14, 2011 forward, the ALJ's conclusion that Valere's condition was permanent and irreversible and unaffected by his continued use of drugs and alcohol is not challenged by the claimant, and the ALJ properly found Valere to be disabled and entitled to benefits as of that date.  Applying the appropriate review standard to the record of the instant case,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be affirmed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the district court, except upon grounds of plan error.  See

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 22nd day of January, 2015.


_____
Patrick J. Hanna
United States Magistrate Judge


COPY SENT:

DATE:   1/22/2015
BY:         EFA
TO:         RFD
              cg

-30-